UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.: 3:19-CR-127-TAV-HBG ) |
| TERRY LEE GILBREATH, | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This criminal case is before the Court on defendant's renewed motion for a judgment of acquittal and motion for a new trial [Doc. 32], which the government opposes [Doc. 35]. After considering the record and controlling law, for the reasons that follow, the Court will **DENY** defendant's motion.

**I.  Background**

On August 6, 2019, a federal grand jury returned a one-count indictment against defendant charging production of child pornography in violation of 18 U.S.C. § 2251(a) [Doc. 1]. This charge arose out of law enforcement's recovery of a video allegedly depicting defendant and a minor engaged in sexually explicit conduct, which was produced on September 12, 2015, using defendant's cell phone [*Id.*]. The indictment was thereafter superseded to add a second production-of-child-pornography charge [Doc. 15]. The added charge arose out of the discovery of a video allegedly depicting defendant and the same minor engaged in sexually explicit conduct, which was produced on September 6, 2015, also using defendant's cell phone [*Id.*].

The case proceeded to trial on February 18, 2020 [Doc. 24]. At the close of the government's case-in-chief, defendant made an oral motion for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, which the Court denied [Doc. 26]. After a two-day trial, a jury convicted defendant on both counts [Doc. 28]. Defendant now renews his motion for a judgment of acquittal and moves, in the alternative, for a new trial [Doc. 32].

## II. Legal Standards

A motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure challenges the sufficiency of the evidence to support the conviction. *See* Fed. R. Crim. P. 29(c); *United States v. Montgomery*, 358 F. App'x 622, 628 (6th Cir. 2009). When reviewing such a motion, the Court must decide "whether, after viewing the evidence in a light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In doing so, the Court must not weigh evidence, assess witness credibility, or "substitute its judgment for that of the jury." *United States v. Chavis*, 296 F.3d 450, 455 (6th Cir. 2002). This standard places a "very heavy burden" on defendants. *Id.*

Alternatively, the Court "may vacate any judgment and grant a new trial" under Rule 33 "if the interest of justice so requires." Fed. R. Crim. P. 33(a). "Rule 33's 'interest of justice' standard allows the grant of a new trial where substantial legal error has occurred." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010). A Rule 33(a) motion

2

"may be premised upon the argument that the jury's verdict was against the manifest weight of the evidence." *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007). But such motions should be granted only "in the extraordinary circumstances where the evidence preponderates heavily against the verdict," *id.* (quoting *United States v. Turner*, 490 F. Supp. 583, 593 (E.D. Mich. 1979)), or, in other words, "when the verdict exceeds the bounds of reasonableness." *United States v. Burks*, No. 19-6010, slip op. at 4 (6th Cir. Sept. 4, 2020). As the Sixth Circuit has recently explained: "On the one hand, [the court] must scrutinize the record and ensure that a 'miscarriage of justice' did not occur. On the other hand, the court must respect the role of the jury and ensure that evidence-supported convictions are upheld." *Id.* (quoting *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998)). In contrast to a Rule 29 motion, a district judge considering a Rule 33 motion "may act as a thirteenth juror, assessing the credibility of witnesses and the weight of the evidence." *Id.* (citing *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998)). However, "the court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." *Butcher v. United States*, 368 F.3d 1290, 1297 (11th Cir. 2004) (quoted by the Sixth Circuit in *Burks*). "The decision whether to grant a new trial is left to the sound discretion of the district court . . . ." *United States v. Wheaton*, 517 F.3d 350, 361 (6th Cir. 2008) (quoting *United States v. Pierce*, 62 F.3d 818, 823 (6th Cir. 1995)).

3

**III.     Analysis**

Defendant moves for a judgment of acquittal and, in the alternative, a new trial on both charges of production of child pornography in violation of 18 U.S.C. § 2251(a) [Doc. 32].  As the Court instructed the jury, production of child pornography in violation of § 2251(a) has two elements, which the government must prove beyond a reasonable doubt: "First, that the defendant employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct"; and "second, that the visual depiction was produced or transmitted using materials that were mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including a computer."  Closing Jury Charge, p. 18 (quoting Sixth Circuit Pattern Jury Instruction Nos. 2.02, 16.01); *see also* 18 U.S.C. § 2251(a).

In moving for a judgment of acquittal, defendant challenges the sufficiency of the government's evidence as to each element [Doc. 32 p. 6–7].  With respect to the first element, defendant challenges only the identity component, that is, that *he* employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct.  And with respect to the second element, defendant argues that the government's evidence was insufficient for a jury to conclude that the production materials had been mailed, shipped, or transported in or affecting interstate or foreign commerce.  Defendant challenges the government's case with respect to these same two elements in moving for a new trial [*Id.* at 7–9].  The Court addresses each element in turn.

A.      **Identity**

Defendant argues that the government failed to prove identity [Doc. 32 p. 6]. Devoid of any direct evidence, defendant contends, the government's "entire proof" as to this element "relied on a mark on Gilbreath's hand" [*Id.*]. This circumstantial evidence, he claims, "fails to prove his guilt beyond a reasonable doubt" [*Id.*].

The government counters that while the mark on defendant's hand is "powerful evidence" of defendant's identity, defendant is incorrect in arguing that this was the only evidence of his identity [Doc. 35 p. 2]. Rather, the government states, it introduced evidence showing that "the two child pornography videos were produced on defendant's cell phone and uploaded to his hard drives which were password protected in his name" [*Id.*]. GPS taken from still frames of the two videos, the government notes, showed that the production took place at defendant's home, and further, a law enforcement witness identified defendant's bathroom in one of the videos [*Id.*]. Additionally, the government points to evidence that defendant "inserted himself into the lives of the [victim's] family" within the same month as the production of the child pornography [*Id.*], buying the victim gifts, requesting that the victim spend the night at his home, paying for the victim to attend a dance, and otherwise supporting the victim's "simple, financially struggling family" [*Id.* at 3]. The government argues that altogether, this evidence "clearly showed the crime had been committed by the defendant and no one else" [*Id.*].

Viewing the evidence in the light most favorable to the government, the Court finds that a rational jury could conclude, beyond a reasonable doubt, that it was defendant who

5

employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct.

Starting with the video and photographic evidence, although defendant's face is not seen in the videos or images containing child pornography that were introduced into evidence, witnesses identified the minor's face, voice, and/or clothing in the videos and images, and multiple witnesses testified that the minor had identified defendant as the individual who had sexually abused her. A law enforcement officer testified that, having familiarized himself with defendant's home during the execution of a search warrant at the home, he recognized the location where the September 6, 2015 video was recorded as defendant's bathroom, specifically noting that he recognized the flooring. That same witness testified that he believed the September 12, 2015 video was filmed in defendant's bedroom because the green sheets in the video resembled the green sheets on defendant's bed which were seized when law enforcement searched defendant's home. Additionally, as defendant acknowledges, the forensic examiner who found child pornography on defendant's devices testified that across the various videos and images containing child pornography that he reviewed, the male depicted in those videos and images has a mark on his hand. This mark, the witness testified, was similar to a mark on defendant's hand, which the witness identified in photographs and stills of videos in which defendant's face, as identified by numerous witnesses, is seen.

In addition to presenting video and photographic evidence that implicated defendant, as well as testimony related thereto, the government also presented metadata of

6

files containing child pornography showing that those files were produced at defendant's home and using defendant's devices. Specifically, the forensic examiner testified that he found child pornography on defendant's external hard drive, internal hard drive, and LG cellular phone, including the September 6, 2015 video (Government's Exhibit 1), which he found on defendant's external hard drive and the September 12, 2015 video (Government's Exhibit 21), which he found on defendant's internal hard drive, each in a "Recycle Bin" folder under the user "Lee," a password-protected user account. Metadata of the September 12, 2015 video showed that it was taken on an LG device, and metadata of a still frame from that video on defendant's hard drive, as well as that of other images containing child pornography, showed that these images were created at defendant's home and on defendant's cell phone on September 12, 2015. Government's Exhibits 23, 26; *see also* Government's Exhibit 18. Additionally, according to the forensic examiner, thumbnails of both the September 6, 2015 video and the September 12, 2015 video were discovered on defendant's cell phone. *See* Government's Exhibits 6, 9.

Further, as discussed in the government's response [Doc. 35 p. 2–3], the government introduced evidence, namely the testimony of the minor's parents, that defendant "inserted himself into the lives of the [minor and her] family" in early fall of 2015, around the time of the creation of the videos at issue.

The Court, viewing all of this evidence in the light most favorable to the government, finds the evidence sufficient to support the jury's finding as to the essential element of identity. Thus, defendant has failed to carry his "very heavy burden" to show

7

that no rational trier of fact could have found beyond a reasonable doubt that *he* employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct. *Chavis*, 296 F.3d at 455. Accordingly, defendant is not entitled to a judgment of acquittal on the basis of insufficient evidence of identity.

Defendant's argument [Doc. 32 p. 7] that granting him a new trial is in the interest of justice because the jury's verdict was against the manifest weight of the evidence with respect to identity is also not well taken. Viewing the government's evidence as "a thirteenth juror," the Court finds that this case does not present "the extraordinary circumstances where the evidence preponderates heavily against the verdict." *Hughes*, 505 F.3d at 593; *see also Burks*, No. 19-6010, slip op. at 4. As the Court has discussed, the amount of evidence presented by the government as to identity was substantial: the evidence showed that, based on the distinctive mark on his hand, *he* was the adult male depicted in the videos and images at issue and that these videos and images were produced on *his* devices, at *his* home, and using the minor who identified *him* as her abuser. Defendant does not identify what evidence in the record preponderates against the jury's conclusion as to defendant's identity. Thus, he is not entitled to a new trial on the ground that the evidence of identity preponderates heavily against the verdict.

**B.   Interstate or Foreign Commerce**

Next, defendant argues that the government's proof as to the interstate-or-foreign-commerce element of the offense, which he states was "limited exclusively to" the

inscriptions on his hard drives and cell phone noting its country of origin [Doc. 32 p. 6], is insufficient to support a conviction [*Id.* at 7]. The government's witnesses, defendant further notes, did not have personal knowledge of whether those devices were manufactured in the location noted thereon [*Id.*].

The government disagrees with the implication of defendant's argument, that is, that the government must prove this element by calling a representative of a device's manufacturer as a witness to testify that the devices were manufactured outside of the United States [Doc. 35 p. 3]. The government notes that it "presented evidence that defendant's phone and hard drives had identifiers indicating that they were manufactured outside the country" [*Id.*] and that "[t]here was no evidence presented at trial that the identification on the phone or hard drives had been in anyway modified or altered" [*Id.*]. This, the government argues, is sufficient evidence upon which a rational jury could find that defendant's phone and hard drives "travelled outside the United States before travelling in the United States, crossing state lines into Tennessee" [*Id.*], satisfying the "minimal effect" standard for finding that the devices affected interstate or foreign commerce [*Id.* at 3–4].

The government is correct. Defendant posits that the trade inscription on a device used to produce a visual depiction of a minor engaged in sexually explicit conduct is insufficient evidence of the second element of a § 2251(a) violation to sustain a conviction. But the Sixth Circuit's opinion in *United States v. Lively* belies this argument. 852 F.3d 549, 564–65 (6th Cir. 2017).

9

In *Lively*, the government relied exclusively on a hard drive's country of origin to satisfy the interstate-or-foreign-commerce element. *Id.* at 552. But, because the government had not proved that the defendant had the purpose of producing the images on the hard drive, *id.* at 553, the government needed to have shown that the images the defendant did have the purpose of producing—images on a SanDisk memory card—were produced using a device that had a nexus to interstate or foreign commerce. *Id.* at 558. Fortunately for the government, despite intending to rely exclusively on the hard drive's origin to satisfy this element, the government had also introduced into evidence the SanDisk memory card, which bore the trade inscription "Made in China." *Id.* at 554–55. The Sixth Circuit acknowledged that "nobody—not the government, not Lively, not the district court—referenced the SanDisk memory card's trade inscription, or its country of origin." *Id.* at 555. But during the trial, the SanDisk memory card was displayed and magnified on a projector and handed to the jury so that the jurors could view it themselves. *Id.* at 555, 564. This, the Sixth Circuit determined, was sufficient evidence upon which a rational jury could conclude that the SanDisk memory card was mailed, shipped, or transported in or affecting interstate or foreign commerce, satisfying the interstate-or-foreign commerce element, notwithstanding the government's intention in introducing this and other evidence. *Id.* at 558; *accord United States v. Saguil*, 600 F. App'x 945, 947 (5th Cir. 2015) (per curiam).

10

In determining in *Lively* that the introduction of a device bearing a trade inscription indicative of foreign manufacture into evidence—absent any testimony verifying the inscription or otherwise related thereto—was a sufficient basis upon which a rational jury could conclude that the interstate-or-foreign-commerce element was proven beyond a reasonable doubt, the Sixth Circuit impliedly rejected the argument defendant seems to be advancing here, that is, that additional evidence, namely testimony of witnesses with "personal knowledge of whether those items were in fact manufactured in the location noted thereon" [Doc. 32 p. 6], was required for a rational jury to find the government had satisfied its burden with respect to this element. Thus, the Court will reject this argument as inconsistent with Sixth Circuit precedent.

Further, the Court finds that the government's evidence as to the interstate-or-foreign-commerce element in this case was more ample than that which the Sixth Circuit determined to be sufficient in *Lively* and thus is sufficient to show the requisite nexus with foreign or interstate commerce. Similar to *Lively*, defendant's Seagate external hard drive, which bore the trade inscriptions "Assembled in Thailand" and "Product of China," was admitted into evidence without objection (Government's Exhibit 3) as was defendant's Western Digital internal hard drive, bearing the trade inscription "Product of Malaysia," (Government's Exhibit 10) and defendant's LG cell phone (Government's Exhibit 5). And, beyond the type of evidence introduced in *Lively*, the trade inscriptions of defendant's various devices were discussed by witnesses as well as counsel. Specifically, investigators testified that defendant's external hard drive had, in light of the trade inscriptions thereon,

11

travelled in or affected interstate or foreign commerce. And, as the government notes, the forensic examiner testified that he had researched the issue of whether defendant's external hard drive had been manufactured in the state of Tennessee and found no indication that it had. Similarly, the forensic examiner testified that defendant's internal hard drive had also, in light of the trade inscriptions thereon, travelled in or affected interstate or foreign commerce and that he had researched whether the internal hard drive had been manufactured in Tennessee and found no indication that it had. With respect to defendant's cell phone, the forensic examiner testified that, based on the phone's trade inscription, it was manufactured in China.

In light of *Lively*, the Court, viewing all of this evidence in the light most favorable to the government, finds the evidence in this case sufficient for a rational jury to conclude beyond a reasonable doubt that the visual depictions at issue were produced using materials that were mailed, shipped, or transported in or affecting interstate or foreign commerce. Accordingly, defendant is not entitled to a judgment of acquittal on the basis of insufficient evidence as to the interstate-or-foreign-commerce element.

Defendant next argues [Doc. 32 p. 7] that, in light of the alleged insufficiency of the government's evidence with respect to this element, the jury's verdict was against the manifest weight of the evidence and that granting him a new trial is therefore in "the interest of justice." Fed. R. Crim. P. 33. Additionally, defendant claims [*Id.* at 7–9] that his conviction resulted in a violation of his Fifth Amendment right to due process because the

12

government's proof with respect to the element of interstate or foreign commerce "amounts to nothing more than preponderance of the evidence" [*Id.* at 7].

Each of these arguments is also in tension with *Lively* and as such, must also be rejected. Specifically, the Court again notes that the Sixth Circuit's determination as to the sufficiency of the evidence in *Lively* refutes the argument that the government's evidence "amount[ed] to nothing more than a preponderance of the evidence" and failed to satisfy the burden of proof the Fifth Amendment requires in a criminal case [*Id.* at 7]. *See* 852 F.3d at 564–65. Accordingly, the Court finds no due process violation warranting a new trial here.

And sitting as the "thirteenth juror," the Court finds that the government's evidence as to this element, namely the trade inscriptions on defendant's devices, was convincing and reliable. The trade inscriptions indicate that the devices were manufactured outside of the United States, and in general, trade inscriptions are considered "trustworthy." *Cf.* Fed. R. Evid. 902(7) (providing that trade inscriptions are "self-authenticating" and thus "require no extrinsic evidence of authenticity in order to be admitted" into evidence); *United States v. Boles*, 914 F.3d 95, 109 (2d Cir. 2019) (noting that Rule 902 providing that trade inscriptions are self-authenticating indicates that such inscriptions are "particularly trustworthy"); *Saguil*, 600 F. App'x at 947 (noting trade inscriptions' "guarantees of trustworthiness" given that they "are required by law, 19 U.S.C. § 1304(a), and false designations of origin give rise to civil liability, 15 U.S.C. § 1125"). While it is certainly possible that defendant's devices were not manufactured in the countries

13

identified in the devices' respective inscriptions, as the First Circuit has stated, "[c]ommon sense . . . suggests a low probability that someone would stamp 'Made in China' on a device made in the United States and presumably marketed here." *United States v. Burdulis*, 753 F.3d 255, 263 (1st Cir. 2014). And, as the government notes [Doc. 35 p. 3], there was no evidence presented at trial that provides a basis to think otherwise. Thus, the government's evidence of this element could be reasonably believed by a jury.

For these reasons, the Court finds that the verdict does not exceed the bounds of reasonableness. Rather, the evidence supports a finding that defendant's devices had "at least [the] minimal effect upon interstate [or foreign] commerce" necessary to find that the government had satisfied its burden with respect to this element. Closing Jury Charge, p. 22 (quoting Sixth Circuit Pattern Jury Instruction No. 16.01). Accordingly, defendant is not entitled to a new trial on the ground that the verdict is against the manifest weight of the evidence with respect to the interstate-or-foreign-commerce element.

## IV. Conclusion

For the reasons discussed, the Court finds, after viewing the evidence in a light most favorable to the government, that a rational trier of fact could have found beyond a reasonable doubt that *defendant* employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct and that the visual depiction was produced or transmitted using materials that were mailed, shipped, or transported in or affecting *interstate or foreign* commerce. Additionally, the Court finds that granting defendant a new trial is not in the

14

interest of justice. Neither a judgment of acquittal nor a new trial is warranted, and defendant's motion [Doc. 32] is therefore **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE